# United States Court of Appeals for the Federal Circuit

2009-1418
(Reexamination no. 90/007,015)

IN RE SUITCO SURFACE, INC.

George C. Summerfield, Stadheim & Grear, Ltd., of Chicago, Illinois, argued for appellant.

Joseph G. Piccolo, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Raymond T. Chen, Solicitor, and Scott C. Weidenfeller, Associate Solicitor.

Kevin H. Rhodes, 3M Innovative Properties Company, of St. Paul, Minnesota, for amicus curiae.

Appealed from: United States Patent and Trademark Office
Board of Patent Appeals and Interferences

# United States Court of Appeals for the Federal Circuit

2009-1418
(Reexamination no. 90/007,015)

IN RE SUITCO SURFACE, INC.

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED:  April 14, 2010
_____

Before RADER, PROST, and MOORE, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The United States Patent and Trademark Office (the "PTO") rejected certain claims of U.S. Patent No. 4,944,514 (the "'514 patent"), owned by Suitco Surface, Inc., as anticipated during a reexamination proceeding.  Because the PTO's rejection was based on an unreasonable construction, this court <u>vacates and remands</u>.

I.

The '514 patent claims a "floor finishing material" for use on athletic courts, bowling lanes, and other "floor surfaces [made] of wood, linoleum, terrazzo, [or] concrete." '514 patent, abstract.  The invention is essentially a thin plastic sheet placed over a floor surface connected by an adhesive layer.  Claim 4 is representative:

> 4. On a floor having a flat top surface and an improved <u>material for finishing the top surface of the floor</u>, the improvement comprising:

at least one elongated sheet including a <u>uniform flexible film</u> of clear plastic material having a thickness between about one mil and about twenty-five mils and

a continuous layer of adhesive material disposed between the top surface of the floor and the flexible film, the adhesive layer releasably adhering the flexible film onto the top surface of the floor.

(emphases added). The specification and later dependant claims teach that appropriate boundary lines, team logos, and other such markings may be applied to the undersurface of the finishing sheet before application on the floor. <u>Id.</u> at col.5 ll.61-68.

A.

This court is no stranger to the '514 patent. Indeed, this court has reviewed this patent twice already. In 1996, Middleton, Inc., the exclusive licensee of the '514 patent, brought suit against 3M Company in the United States District Court for the Northern District of Illinois alleging infringement of claims 1-4 of the '514 patent. After a <u>Markman</u> hearing, the district court construed two terms: "material for finishing" and "uniform flexible film." "Material for finishing" was construed to mean "a material that makes more <u>durable</u> the underlying surface of the floor, and is applied for that purpose." "Uniform flexible film" was construed to mean "the material must be of a uniform thickness, and excludes material in which there are any variations in thickness."

After several months of discovery, 3M moved for summary judgment of noninfringement based on the "material for finishing" and "uniform flexible film" limitations. The district court granted 3M's motion based solely on the "material for finishing" limitation. <u>Middleton, Inc. v. Minn. Mining & Mfg. Co.</u>, No. 96 C 6781, 1998 WL 852841 (N.D. Ill. Nov. 24, 1998). On appeal, this court vacated and remanded

finding nothing in the specification or prosecution history supporting a "durability" aspect to the asserted claims:

> The text of claim 4 leaves little ambiguity as to the meaning of "material"- namely, at least one elongated sheet of a uniform flexible film of clear plastic having a thickness between about one and about twenty-five mils. What remains in dispute is the precise meaning of the phrase "for finishing." In the context of claim 4, "finishing" clearly refers to providing a clear, uniform layer on the top surface of a floor. Significantly, there is no indication in claim 4 as to what level of durability, if any, the "finish" layer must have. Thus, claim 4 implies a broad meaning for the term "finishing," which is consistent with the dictionary definition of "finish." See, e.g., Webster's Ninth New Collegiate Dictionary 464 (1984) (defining "finish" as "the final treatment or coating of a surface," but not identifying any specific properties).

Middleton, Inc. v. Minn. Mining & Mfg. Co., No. 96 C 6781, 1999 WL 1072246 at *4 (Fed. Cir. Nov. 16, 1999).

On remand, the district court granted 3M's motion for summary judgment a second time. This time the trial court based its summary judgment order on the "uniform flexible film" limitation. In particular, the district court found that the accused films did not have the same thickness level throughout but were instead "intentionally manufactured in a manner that results in uneven thickness throughout the film." Middleton, Inc. v. Minn. Mining & Mfg. Co., No. 96 C 6781, 2001 WL 1155151 at *2 (N.D. Ill. Sept. 28, 2001). This court again remanded finding that a "uniform flexible film includes, for example, a flexible film having the same thickness throughout, as well as a flexible film having the same textured surface throughout." Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1389 (Fed. Cir. 2002).

On the second remand, the Illinois District Court transferred the case to the Southern District of Iowa. At that point, 3M filed an ex parte reexamination request with the PTO in 2004. The request cited three prior art references not previously reviewed:

U.S. Patent No. 3,785,102 to Amos, U.S. Patent No. 4,543,765 to Barrett, and U.S. Patent No. 4,328,274 to Tarbutton. The district court stayed the case after the request for reexamination was granted. The examiner then rejected claims 4-8 as anticipated by Amos, claims 4 and 6-8 as anticipated by Tarbutton, and claims 4 and 5 as anticipated by Barrett. Only Amos and Barrett are at issue in this appeal.

B.

Amos teaches a floor-covering pad comprised of a plurality of plastic sheets connected together by a plurality of adhesive layers. It is designed to be used right before entry into a clean room or a hospital bay to remove any dirt from the shoes or wheels of incoming traffic. U.S. Patent No. 3,785,102 col.1 l.64-col.2 l.4.



As shown in the figures above, pad 15 consists of a plurality of plastic sheets 16 with acrylic latex adhesive layers 17 above and below each of them. The adhesive layer beneath the lowermost plastic sheet releasably attaches the sheet—along with the rest of the pad—to the top surface of the floor. See id. at col.4 ll.49-51 ("The lowermost sheet 16 has on its undersurface 22 a layer 23 of adhesive to removably affix the pad 15 to the floor 14.").

The entire pad is first placed on the floor with the bottom adhesive layer acting as the glue. The top plastic sheet is then peeled to expose an adhesive layer. That top

adhesive layer then contacts incoming shoes or wheels and removes any excess dirt that would otherwise be dragged into the room. Over time, once the top layer fills with dirt, the next plastic sheet can be peeled off to expose a new adhesive layer. See id. at col.4 ll.54-63.

The plastic sheets are made of polyethylene or polypropylene, which "may be transparent" and between ".0002 to .0003 inches in thickness." Id. at col.4 ll.12-15. They may also be imprinted with a decorative design. Id. at col.4 ll.33-36. The sheets and adhesive layers are kept very thin to ensure that the pad "does not present an obstacle to foot traffic or cause jarring or shock to a patient on a gurney when wheeled over such a pad 15." Id. at col.4 ll.30-32.

Barrett teaches the use of a clear plastic film connected to a floor with an adhesive layer. Barrett's cover sheet temporarily protects a floor during construction. The sheet is supposed to be removed whenever the building or room opens. U.S. Patent No. 4,543,765 col.9 ll.7-11.



FIG.1

A plastic cover sheet 16 is attached to a set of floor tiles 12 using an adhesive 14. "[P]lastic cover sheet 16 . . . is formed from a transparent or translucent plastic film . . . e.g., four mil low density polyethylene film." Id. at col.6 ll.2-8.

C.

The Board of Patent Appeals and Interferences (the "Board") affirmed the examiner's rejection of claim 4 in view of either Amos or Barrett and claim 8 in view of Amos. Suitco did not separately address any of the remaining claims. In its rejection, the Board construed the term "material for finishing the top surface of the floor" to mean "requiring a material that is structurally suitable for placement on the top surface of a floor." Under that construction, according to the Board, the "material for finishing the top surface of the floor" could be any layer above the floor regardless of whether it was the top or final layer. The Board also construed the term "uniform flexible film" to mean "including, for example, a flexible film having the same thickness throughout, as well as a flexible film having the same textured surface throughout." Suitco timely appealed to this court challenging the Board's construction for the "material for finishing the top surface of the floor" and contending that no cited prior art reference taught the "uniform" limitation.

II.

"During reexamination, as with original examination, the PTO must give claims their broadest reasonable construction consistent with the specification." In re ICON Health & Fitness, Inc., 496 F.3d 1374, 1379 (Fed. Cir. 2007) (citing In re Am. Acad. of Sci. Tech Ctr., 367 F.3d 1359, 1364 (Fed. Cir. 2004)). This Court thus reviews the

PTO's interpretation of disputed claim language to determine whether it is "reasonable." In re Morris, 127 F.3d 1048, 1055 (Fed. Cir. 1997).

Anticipation is a question of fact reviewed for substantial evidence. In re Baxter Travenol Labs, 952 F.2d 388, 390 (Fed. Cir. 1991). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," In re Kotzab, 217 F.3d 1365, 1369 (Fed. Cir. 2000), and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938).

A.

With respect to the "material for finishing the top surface of the floor" limitation, Suitco contends that the Board should have been bound by this court's earlier construction of "material for finishing." In the alternative, Suitco contends that the Board's adopted construction is unreasonable. This court need not address Suitco's first argument because even under the broadest-construction rubric, the PTO's construction is unreasonable.

The express language of the claims requires a "material for <u>finishing</u> the <u>top</u> surface of the floor." '514 patent col.7 ll.67-68 (emphases added). A material cannot be finishing any surface unless it is the final layer on that surface. Otherwise, the material would not be "finishing" the surface in any meaningful sense of the word.

The PTO's proffered construction ignores this reality by allowing the finishing material to fall anywhere above the surface being finished regardless of whether it actually "finishes" the surface. Indeed, according to the PTO, the finishing surface need only be "<u>structurally suitable</u> for placement on the top surface of the floor"—i.e., several

layers can be placed on top of the "finishing" layer.  If the PTO's construction were accepted, a prior art reference with carpet on top of wood, on top of tile, on top of concrete, on top of a thin adhesive plastic sheet anticipates the claims in question because an adhesive plastic sheet falls at some point in the chain of layers.  This construction does not reasonably reflect the plain language and disclosure of the '514 patent.

Although the PTO emphasizes that it was required to give all "claims their broadest reasonable construction" particularly with respect to claim 4's use of the open-ended term "comprising,"  see Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997) ("the open-ended term comprising . . . means that the named elements are essential, but other elements may be added"), this court has instructed that any such construction be "consistent with the specification, . . . and that claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art."  In re Bond, 910 F.2d 831, 833 (Fed. Cir. 1990) (quoting In re Sneed, 710 F.2d 1544, 1548 (Fed. Cir. 1983)) (emphasis added).

The PTO's construction here, though certainly broad, is unreasonably broad.  The broadest-construction rubric coupled with the term "comprising" does not give the PTO an unfettered license to interpret claims to embrace anything remotely related to the claimed invention.  Rather, claims should always be read in light of the specification and teachings in the underlying patent.  See Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 217 (1940) ("The claims of a patent are always to be read or interpreted in light of its specifications.").  In that vein, the express language of the claim and the specification require the finishing material to be the top and final layer on the

surface being finished.  See, e.g., '514 patent, col.1 ll.15-20 ("The present invention is directed generally to a material and method for quickly and easily producing a transparent wear resistant finish on a smooth flat surface subject to wear and more particularly to a material and method for finishing a floor . . . .").  The PTO's proffered construction therefore fails.

When read in the appropriate context of the claim language and specification, the broadest reasonable construction is clear: the phrase "material for finishing the top surface of the floor" refers to a clear, uniform layer on the top surface of a floor that is the final treatment or coating of a surface.  It is not any intermediate, temporary, or transitional layer.  Because the PTO based its rejection on its unreasonable construction, this court remands with instructions to conduct a new invalidity analysis using the appropriate construction.

B.

Turning to the "uniform flexible film" limitation, Suitco does not challenge the Board's construction of the term to include "for example, a flexible film having the same thickness throughout, as well as a flexible film having the same textured surface throughout."  That construction only requires the finishing material to be the same thickness or the same material.  Suitco instead contends that neither Amos nor Barrett discloses a "uniform flexible film."

But while Amos and Barrett do not expressly use the word "uniform," each certainly discloses the claim element in question.  Amos teaches the use of "very thin" plastic sheets "being from .002 to .003 inch[es] in thickness."  U.S. Patent No. 3,785,102 col.4 l.13.  Despite Suitco's strained suggestion that the disclosure teaches a

"thickness variation of 50%," a more reasonable interpretation is that the plastic sheets can be anywhere between 2 or 3 mils—not that there is any thickness variation therein. To that end, Amos discusses a preferred embodiment where the bottom plastic sheet is 4 mils without reference to any thickness variation. Id. at col.4 ll.37-41. Similarly, Barrett teaches that a "four mil low density polyethylene film can be used." U.S. Patent No. 4,543,765 col.6 ll.7-8. Substantial evidence therefore supports the Board's findings.

Next, Suitco contends that dependent claim 6 is not anticipated by Amos as the Board so found. Claim 6 states:

> 6. The improvement of claim 4 or 5 wherein each elongated sheet includes an opaque decorative layer imprinted on the undersurface of the clear plastic layer between the clear plastic layer and the adhesive layer.

Suitco, however, did not raise any separate argument with respect to claim 6 before the Board. Rather, Suitco confined its arguments to claim 4. Without any reason for its decision not to separately argue claim 6 before the Board, Suitco has waived its separate anticipation argument on appeal. See, e.g., In re Watts, 354 F.3d 1362, 1368 (Fed. Cir. 2004) ("Because the appellant failed to argue his current interpretation of the prior art below, we do not have the benefit of the Board's informed judgment on this issue for our review. Moreover, Watts has shown no reason why we should excuse his failure to raise this argument before the Board."). Claim 6 therefore stands or falls with claim 4.

## III.

For the above-stated reasons, this court vacates-in-part, affirms-in-part, and remands. The PTO's construction of "material for finishing the top surface of the floor"

is unreasonable in light of the express claim language and specification.  Substantial evidence, however, supports the PTO's finding with respect to the "uniform" limitation.

<u>VACATED-IN-PART, AFFIRMED-IN-PART, AND REMANDED</u>.