NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

## IN RE NAREN CHAGANTI

---

### 2011-1344

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: March 9, 2012

---

NAREN CHAGANTI, of Town & Country, Missouri, pro se.

RAYMOND T. CHEN, Solicitor, United States Patent & Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief was SYDNEY O. JOHNSON, JR., Associate Solicitor.

---

Before NEWMAN, REYNA, and WALLACH, *Circuit Judges*.

PER CURIAM.

Naren Chaganti ("Chaganti") appeals the decision by the Board of Patent Appeals and Interferences ("Board") affirming the U.S. Patent and Trademark Office's ("PTO") rejection of all pending claims of U.S. Patent Application

Serial No. 09/307,752 ("the '752 application") and the Board's subsequent denial of Chaganti's Request for Reconsideration. Based on the discussion below, we AFFIRM.

## BACKGROUND

The '752 application claims an "invention [] related to the area of publicly traded securities and other financial instruments." '752 Application. Chaganti's claimed invention enables intangible property owners to sell shares of the property to the highest bidder. *Id.* Claim 7 is representative and reads as follows:

> 7. A computer-implemented method of marketing an *intangible property* interest, the method comprising the steps of:
> establishing an electronic marketplace;
> assigning an identifier to said *intangible property* interest; storing the identifier;
> receiving a bid for purchase of said *intangible property* interest; and
> selling said *intangible property* interest.

'752 application, claim 7 (emphasis added).

The Board found that that the term "intangible property" was not clearly defined in the specification and did not exclude stocks and bonds; the Board therefore determined that the '752 application was either anticipated under 35 U.S.C. § 102(b) by U.S. Patent No. 5,873,071 ("Ferstenberg") or rejected as being obvious under 35 U.S.C. § 103(a) over Ferstenberg. *Ex parte Chaganti*, No. 2009-012123 (B.P.A.I. Sept. 24, 2010).[1] We have jurisdiction under 28 U.S.C. § 1295(a)(4).

---

[1] The Board also determined the claims of the '752 application to be unpatentable under 35 U.S.C. § 103(a)

DISCUSSION

We review the PTO's claim construction *de novo*. *In re Baker Hughes Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000). During examination, the PTO gives claims "their broadest reasonable construction consistent with the specification . . . . [C]laim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259-60 (citations omitted). "The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996). "Thus, the specification is always highly relevant to the claim construction analysis." *Id.* This court reviews the Board's interpretation of disputed claim language to determine whether it is "reasonable." *In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997).

The primary argument Chaganti makes on appeal challenges the PTO's interpretation that "intangible property" does not exclude "stocks and bonds." Chaganti argues he is able to act as his own lexicographer, having defined "intangible property" in the specification so that it excludes stocks and bonds; he asserts that the specification clearly illustrates the intent to exclude stocks and bonds. Chaganti also argues that the PTO erred in not considering the specification.

Chaganti is correct that "[a] patentee may act as its own lexicographer and assign to a term a unique definition that is different from its ordinary and customary

---

over multiple other prior art references. However, it seems that Appellant only challenges the Board's conclusions regarding Ferstenberg. *See* Appellant's Informal Reply Brief ("Appellant's Reply") at 1-5.

meaning; however, a patentee must *clearly* express that intent in the written description." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008) (emphasis added). Here the specification does not *clearly* define "intangible property" or indicate the patentee's intent to exclude stocks and bonds from the phrase "intangible property."

The specification begins: "This invention is related to the area of publicly traded securities and other financial instruments," '752 application at 1, which may be reasonably understood to encompass stocks and bonds. The patent then recites a non-exclusive list of what this particular invention is "related to," offering a wide variety of potential subject matters:

> the use of an electronic apparatus to issue, list, price and trade property interests in intangible forms of property such as patents, trademarks, copyrights, goodwill, licenses, leases, easements, rights, a seafaring route and others; personal rights such as a right to future income of a person; special objects such as collectibles; and services such as a musician's concert recital time or a babysitter's time.

*Id.* The specification also states:

> It should be noted that though a certain types of properties [sic] are discussed in the foregoing, that discussion is by no means limited to the actual types of properties used as an illustration. Thus, the invented method and system should not be limited by the discussion provided herein.

*Id.* at 6.

The specification's list of subject matters relating to the invention makes it difficult to determine the defini-

tion of "intangible property."  In addition, by its very terms, the specification is confusing.  It notes that "no publicly tradeable stock marketplace exists for the sale of certain non-corporate, non-commodity forms of property," citing again to the list above, and adds later that "[t]here is a need, therefore, for a system and method to accommodate sales of such tangibles and intangibles in the marketplace." *Id.* at 1-2.  The imprecise and unclear use of the terms "stock," "non-corporate," "non-commodity," "tangible," and "intangible," complicates the meaning of "intangible property" and its limitations.

Chaganti is correct that the specification also states that "according to the present invention, trading shares in an electronic communication medium involves subject matter other than a corporate stock, bond, option, or futures contracts to delivery of commodities." *Id.* at 9. Indeed, the specification states "the invention is directed toward a method and system to issue, list, price, and trade securities in certain forms of special property for which no publicly tradeable marketplaces currently exist," while also drawing a contrast, numerous times, to established systems such as the New York Stock Exchange. *Id.* at 1-2.[2]  Chaganti contends that this disclosure is a clear indication that the meaning of "intangible property" as used in the specification excludes stocks and bonds. However, since the term "intangible property" is not clearly defined, nor do the embodiments of the invention disclosed in the specification reveal a clear intent to exclude stocks and bonds from the scope of the claims, the

---

[2]    Chaganti also asserts that the PTO erred by not separately addressing the dependent claims.  Since Chaganti does not make distinct arguments with respect to the patentability of the dependent claims on appeal, however, those claims fall along with the independent claims.

Board's construction of "intangible property" is reasonable in view of the written description, and how the written description would be interpreted by one of ordinary skill in the art.

## CONCLUSION

The Board reasonably determined that the contested claim term encompasses stocks and bonds, and we therefore affirm the anticipation and obviousness rejections made to the claims.

**AFFIRMED**.