Opinion for the Court filed by Circuit Judge LOURIE.
Dissenting opinion filed by Circuit Judge CLEVENGER.
LOURIE, Circuit Judge.
Avid Identification Systems, Inc. (“Avid”) appeals from the decision of the Board of Patent Appeals and Interferences (“the Board”) of the United States Patent and Trademark Office (“PTO”) in an ex parte reexamination, rejecting claims 1, 3-10, 12, and 16-20 of its U.S. Patent 5,499,-017 (the “'017 patent”) as anticipated and obvious over three references. See Ex Parte Avid Identification Sys., Inc., No. 2011-000474 (B.P.A.I. Mar. 23, 2011) (“Board Opinion”), reh’g denied, No. 2011-000474 (B.P.A.I. June 14, 2011) {“Rehearing Opinion”). Because the Board did not err in rejecting the claims as anticipated and obvious, we affirm.
BackgRound
Avid owns the '017 patent relating “to systems consisting generically of an interrogator-responsor (or ‘reader’) inductively coupled to a transponder (or ‘tag1) where the reader is associated with the identifying agency and the tag is associated with the object to be identified.” '017 patent col. 1 11. 10-14. Such tags are commonly known as radio-frequency identification (“RFID”) tags. The claims of the '017 patent recite RFID tags that contain both memory that cannot be reprogrammed and memory that can be reprogrammed. Id. col. 1 11. 49-68. They designate some portion of memory as “unalterable,” as represented in claim 1:
1. An electronic identification tag comprising:
a means for permanently storing data in an unalterable fashion, said data being known as unalterable data;
a means for permanently storing data in an alterable fashion, said data being known as alterable data;
means for detecting an interrogation signal;
means for discriminating between a non-modulated signal and a modulated interrogation signal; and
a means for communicating said unalterable data and said alterable data to an electronic identification reader upon detection of a nonmodulated signal.
Id. col. 11 11. 20-31. Each claim in this appeal requires a means for permanently storing data in an unalterable fashion. Independent claims 1 and 20 and dependent claim 3 also include a limitation for “discriminating between a non-modulated signal and a modulated interrogation signal,” e.g., id. col. 11 11. 27-28, while dependent claims 4, 8, and 12 include a limitation for delaying enablement of the tag functions for a predetermined amount of time. E.g., id. col. 11 11. 46-48. Independent claim 17 further provides for a “clock timer and delay circuitry” to prevent the tag from being read twice if the tag is held in the vicinity of the reader. Id. col. 10 11. 27-42.
Three prior art references are relevant to this appeal: U.S. Patent 4,937,581 of Baldwin (“Baldwin '581”), U.S. Patent 4,075,632 of Baldwin (“Baldwin '632”), and U.S. Patent 4,303,904 of Chasek (“Chasek”). Baldwin '581 discloses an identification system that includes an information and identity storage device (an RFID tag) *887 installed on a moving object and at least one interrogation station (an RFID reader). The RFID tag contains a memory bank that stores both “fixed” and “changing” data in different portions of the memory. '581 patent col. 1 11. 61-68. The “fixed” information can be safeguarded by a “protect means” to prevent the erasure or reprogramming of the write-protected “fixed information” stored on the RFID tag. Id. col. 3 11. 32-38. The '581 patent also contains an example in which the “protect means” is integrated with a light activated switch that, only when illuminated, permits the “fixed” information to be erased and reprogrammed. Id. col. 411. 4-8, col. 3,11. 7-10. The example also states that the RFID tag can only be reprogrammed after physically removing it from the moving object. Id. col. 311. 3-7.
Baldwin '632 discloses an RFID system that can discriminate between modulated and non-modulated signals. Modulation is the process whereby a high frequency periodic waveform (or signal) is varied with information desired to be transmitted. By modulating the signal and transmitting the modulated signal, the information can be retrieved after transmission by the receiving device. Baldwin '632 col. 1 1. 64-col. 2 1. 11. Baldwin '632 also discloses a tag and reader combination where the tag receives a non-modulated signal and transmits back a modulated signal. Id. col. 3 11. 25-31. Alternatively, the patent discloses that the reader can send a modulated signal to provide the tag with command signals and other information. Id. col. 3 1. 54-col. 41. 5.
Chasek teaches an electronic toll-paying system wherein the RFID tag includes a mechanism that delays the tag from transmitting its data to an RFID reader for a set period of time. The tags taught by Chasek include a latch switch that disables all but a few non-transmission circuits. Chasek col. 4 11. 64-68. After the tag has paid the toll, the switch disables the tag’s transmission capabilities for a predetermined period of time to prevent the tag from retransmitting information and thus preventing double billing at a toll booth when a vehicle is in slow traffic. Id. col. 5 11. 59-64.
The PTO granted a third party request for ex parte reexamination of the '017 patent on August 8, 2007. The examiner then rejected claims 1, 3-10, 12-13, and 15-20 as anticipated and obvious in light of the above references and their various combinations. Specifically, the examiner rejected claims 7,10, and 19 as anticipated by Baldwin '581; claims 1, 3, and 20 as obvious over Baldwin '581 in view of Baldwin '632; claim 4 as obvious over Baldwin '581 in view of Baldwin '632, further in view of Chasek; claims 5, 6, 9, 16, and 18 as obvious over Baldwin '581; and claims 8, 12, 15, and 17 as obvious over Baldwin '581 in view of Chasek. Independent claim 13 and dependent claim 15 were confirmed as patentable after an initial rejection. Avid appealed the various rejections to the Board.
The Board agreed with the examiner, in particular, rejecting Avid’s argument that Baldwin '581 does not disclose “unalterable data,” which, as indicated, is a limitation of all the claims. Board Opinion, at *7. Because the '017 patent specification lacked an explicit definition for “unalterable data,” the Board construed the term as “data that is not readily changeable” and as such found that Baldwin '581 disclosed that limitation. Id. The Board rejected Avid’s other arguments, finding no error in the examiner’s rejection of claims 1, 3-10, 12, and 16-20, Id. at *7-18, and denied Avid’s petition for rehearing, Rehearing Opinion, at *10. Avid timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).
*888 Discussion
We review the Board’s legal conclusions de novo, In re Elsner, 381 F.3d 1125, 1127 (Fed.Cir.2004), and the Board’s factual findings underlying those determinations for substantial evidence, In re Gartside, 203 F.3d 1305, 1316 (Fed.Cir.2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). We review claim construction de novo. In re Baker Hughes Inc., 215 F.3d 1297, 1301 (Fed.Cir.2000). During reexamination, “the PTO must give claims their broadest reasonable construction consistent with the specification.” In re Suitco Surface, Inc., 603 F.3d 1255, 1259 (Fed.Cir.2010). Anticipation is a question of fact reviewed for substantial evidence in an appeal from the Board. In re Gleave, 560 F.3d 1331, 1334-35 (Fed.Cir.2009). Obviousness, on the other hand, is a question of law, based on underlying factual findings. Graham, v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Elsner, 381 F.3d at 1127.
I.
We first address Avid’s argument that Baldwin '581 does not anticipate claims 7,10, and 19 under 35 U.S.C. § 102, that it does not render obvious claims 5, 6, 9, 16, and 18 under 35 U.S.C. § 103(a), and that it was not a proper reference for obviousness rejections for claims 1, 3, 4, 8, 12, 17, and 20 on the ground that the Board’s construction of “unalterable data” was unreasonable and inaccurate. Avid argues that the Board erred by construing “a means for permanently storing data in an unalterable fashion, said data being known as unalterable data” as “data that is not readily changeable.” Specifically, Avid argues that the function of the limitation “means for permanently storing data in an unalterable fashion” is simply “permanently storing data in an unalterable fashion.” Avid Br. 19.
The Director responds that the Board simply gave the claims their broadest reasonable interpretation consistent with the specification. He argues that the '017 patent provides no explicit definition of “unalterable data,” but that the Board correctly looked to the specification to construe that limitation. The Director points out that the specification describes unalterable data as “permanent” but also as “data that never needs to be changed,” '017 patent, at [57], and data that “usually cannot be reprogrammed,” Id. col. 1 11. 49-57. The Director asserts that the Board was correct in construing “unalterable data” as “data that is not readily changeable.”
We agree with the Director that, as the Board properly gave the limitation “unalterable data” its broadest reasonable interpretation consistent with the specification, it did not err in its construction. The specification itself employs varying terminology in defining unalterable data. Although the patent describes unalterable data as “permanent,” it also describes it as “data that never needs to be changed” and data that “usually cannot be reprogrammed.” Thus, because there was no consistent, explicit definition in the specification, and there were varied uses of the phrase in the patent, the Board under its broadest reasonable construction practice did not err in construing “unalterable data” in the '017 patent claims as “data that is not readily changeable.”
II.
Avid argues that claims 7,10, and 19 are not anticipated by Baldwin '581 because it does not disclose a “means for permanently storing data in an unalterable fashion.” Aside from Avid’s contention that the *889 Board erred in construing “unalterable data,” Avid argues that Baldwin '581 only discloses “protected” memory that is not permanent and unalterable. It argues that because of this shortcoming, the Board’s determination is not supported by substantial evidence because all data in the Baldwin '581 RFID tag are alterable. Avid points to examples within the '017 patent’s specification that disclose non-reprogrammable memory types, which indicate the range of memory types that it discloses as a means for storing unalterable data, and argues that Baldwin’s memory is none of those.
The Director contends that Baldwin '581 teaches an RFID tag with a memory that stores both “fixed” data, i.e., data that cannot be altered, and alterable data. He argues that the ordinary meaning of the term “fixed” is “determined, established, set” and “not subject to change or variation.” The American Heritage College Dictionary 515 (3d. ed. 1997). The Director states that the Board properly found “no difference between [Baldwin '581’s] ‘fixed’ data or data protected from erasure and the claimed ‘unalterable’ data or data that are not readily changeable since both forms of data are ‘fixed’ and are therefore not readily changeable.” Board Opinion, at *7.
We have already determined that the Board properly construed the claim term “unalterable data.” Avid concedes in its brief that Baldwin '581 discloses an RFID tag including logic circuit and memory, trigger circuit and a transmitter. Its only contention that claims 7, 10, and 19 are not anticipated by the reference is that the Board’s determination that Baldwin '581 taught unalterable data was not supported by substantial evidence. When determining whether Baldwin '581 taught “unalterable data,” the Board found that the patent discloses a system “that can store both fixed and changing information,” Baldwin '581 col. 1 11. 62-63, data that “can be protected from accidental erasure so that portion cannot be changed,” id. col. 1 11. 65-67 (emphasis added), “information [that] is protected from erasure,” id. col. 2 11. 3-4, and data that “may be protected from erasure as they contain fixed information,” id. col. 2 11. 14-16. It was after pointing to those statements that the Board found no difference between Baldwin’s “fixed” data and the '017 patent’s “unalterable data.” The Board considered Avid’s argument that even the “protected” data of Baldwin '581 is alterable but determined that the protected data may only be reprogrammed when the RFID tag is physically removed from the moving object it is installed on. Baldwin '581 col. 3 11. 6-7. While the tag is installed, the data are permanent and unalterable. Board Opinion, at *8. We thus conclude that the Board’s determination that Baldwin '581 anticipates claims 7, 10, and 19 was supported by substantial evidence.
Because the Board did not err in giving “unalterable data” its broadest reasonable interpretation and in finding Baldwin '581’s disclosure to be of a means for permanently storing data in an unalterable fashion, we affirm the findings of the Board. We thus affirm the Board’s conclusion that claims 7,10, and 19 are invalid as anticipated by the Baldwin '581 reference.
The dissent argues that the PTO failed to properly examine the “means for storing” clause under § 112, ¶ 6 and hence that we should vacate the Board’s decision and remand for further consideration. We disagree.
As the Director argues, Avid waived that point by failing to specifically argue that alleged procedural fault. Avid failed to point out to the Board on appeal or on rehearing its contention that the procedure *890 for interpreting the “means for storing” clause was not followed. Avid and the dissent point to the fact that the Board has previously evaluated § 112, ¶ 6 cases without invoking waiver, but the fact that the Board has on occasion overlooked particular procedural defaults does not mean that it is compelled to waive those procedural requirements for all subsequent cases. Any technical shortcomings in the procedure for evaluating the clause at issue were not raised and were thus waived. See, e.g., Ex Parte Puneet Sharma, No. 2009-015156, 2012 WL 2486755, at *6 n. 2 (B.P.A.I. June 27, 2012) (noting that “Appellant’s arguments do not rely on the structure disclosed in Appellants’ Specification ... and equivalents thereof, and such arguments are, therefore, waived”).
Use of the word “means” customarily raises a presumption that a clause containing that word followed by the function carried out by that means is subject to the limitation that the means covered by the claim are limited to structure recited in the specification for carrying out that function, plus equivalents. The dissent, and Avid, argue that without going through the formalities of finding the corresponding structure in the specification, a proper anticipation and obviousness analysis cannot be carried out. But Avid did not fully raise this point with the Board. And, while the presumption that the use of the word “means” requires a search for structure in the application at issue, an applicant needs to specifically raise the point if it is challenging the application of § 112, ¶ 6 by the PTO. See 37 C.F.R. § 41.37(c)(l)(v) (requiring identification of support in specification and, for means-plus-function limitations, corresponding structure as well). An appellant cannot prevail by arguing alleged technical flaws in the PTO’s procedure when it has itself failed to comply with its own procedural obligations.
Here, the Board’s rejection of the claims under the PTO’s “broadest reasonable interpretation” guideline was sufficient to sustain the Board’s rejection. If Avid wished to challenge the examiner’s decision, it needed to explicitly articulate its grounds for doing so. Having failed to do that, it waived such an argument.
Avid advances the same arguments and reasoning to attack the Board’s determination that claims 5, 6, 9, 16, and 18 were correctly rejected as obvious over Baldwin '581. Because Avid’s arguments for anticipation and obviousness are the same, that the “unalterable data” term was incorrectly construed and not disclosed in Baldwin '581, for the reasons previously set forth we further conclude that the Board did not err in finding claims 5, 6, 9, 16, and 18 obvious over Baldwin '581. We also conclude that the Board did not err in utilizing Baldwin '581 as a reference, in combination with other references in rejecting claims 1, 3, 4, 8, 12,- 17, and 20 as obvious under 35 U.S.C. § 103.
III.
Avid next argues that the Board erred in rejecting claims 1, 3, and 20 as obvious over Baldwin '581 in view of Baldwin '632. Avid contends that the Board incorrectly concluded that Baldwin '632 disclosed a “means for discriminating between a non-modulated signal and a modulated interrogation signal; and a means for communicating said unalterable data and said alterable data to an electronic identification reader upon detection of a non-modulated signal.” E.g., '017 patent col. 11 11. 27-31. Avid also argues that Baldwin '632 does not disclose a reflexivity modulator that receives a modulated interrogation signal as required by the claims.
The Director responds that Baldwin '632 was cited by the examiner only to show *891 that use of modulated and nonmodulated interrogation pulses was well-known in the art. The Director argues that Avid’s arguments mischaracterize the examiner’s rejection. J.A. 450. Instead, he contends that the examiner utilized Baldwin '581, not Baldwin '632, for the limitations Avid contests.
We agree with the Director that Baldwin '632 was only cited to show that modulated and non-modulated signals were well-known in the art. J.A. 183. Avid makes arguments concerning the Baldwin '632 patent’s failure to disclose specific limitations of the '017 patent claims, but the Board clearly stated in its opinion that those elements were disclosed in Baldwin '581. Board Opinion, at *12. The examiner cited Baldwin '632 only to show that the use of modulated and non-modulated signals was well-known in the art. Avid cites nothing to the contrary. We thus conclude that the Board did not err in finding claims 1, 3, and 20 obvious over Baldwin '581 in view of Baldwin '632.
IV.
Avid argues that the Board erred in rejecting claims 4, 8, 12, and 17 as obvious over Baldwin '581 in view of Chasek. Avid contends that the Board erred in concluding that Chasek disclosed the limitations in claims 4, 8, and 12 of “controller means for delaying enablement of the tag functions for a predetermined amount of time following receipt of an interrogation signal.... ” E.g., '017 patent col. 11 11. 46-48. Avid further contends that the Board erred with respect to the limitation in claim 17 of “a clock timer and delay circuitry for counting a predeterminable number of clock cycles after initial receipt of [the interrogation signal].” Id. col. 13 11. 34-42. Avid argues that its claims call for the delay to occur after initial receipt of the signal from the RFID reader, but Chasek only discloses a latching switch whose delay starts after receipt of the entire transmission.
The Director responds that this new argument was not raised before the Board and is thus waived. He contends that in the initial Board proceedings Avid only argued that the delay circuitry disclosed in Chasek was not located in the vehicle transponder/tag as required by the claims, not that the '017 patent requires a delay to occur on initial receipt of the signal. The Director argues that the Board on rehearing rejected the initial receipt delay argument as waived and that Avid cannot raise the waived argument on appeal. Avid does not respond to this point in its reply brief.
We agree with the Director that Avid first raised this argument in its petition for rehearing and that the Board properly refused to consider it in the first instance under 37 C.F.R. 41.52(a)(1). Similarly, “our review of the Board’s decision is confined to the ‘four corners’ of that record” because for anything outside that record, “we do not have the benefit of the Board’s informed judgment on [that] issue for our review.” In re Watts, 354 F.3d 1362, 1367-68 (Fed.Cir.2004). Because Avid failed to raise the timing of the delay argument before the Board, that argument is waived. Thus, the Board did not err in refusing to consider the argument based on the timing of the delay with respect to the obviousness of claims 4, 8, 12, and 17.
IV.
We have considered Avid’s remaining arguments and conclude that they are without merit. Accordingly, the Board’s decision is
AFFIRMED.