NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

## IN RE AVID IDENTIFICATION SYSTEMS, INC.

---

2012-1092

(Reexamination No. 90/008,702)

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: January 8, 2013

---

DAVID B. ABEL, DLA Piper LLP, of Los Angeles, California, argued for appellant.

BRIAN T. RACILLA, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor, and THOMAS W. KRAUSE, Associate Solicitor. Of counsel was BENJAMIN D.M. WOOD, Associate Solicitor.

---

Before LOURIE, CLEVENGER, and BRYSON,* *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LOURIE.
Dissenting opinion filed by *Circuit Judge* CLEVENGER.

LOURIE, *Circuit Judge*.

Avid Identification Systems, Inc. ("Avid") appeals from the decision of the Board of Patent Appeals and Interferences ("the Board") of the United States Patent and Trademark Office ("PTO") in an *ex parte* reexamination, rejecting claims 1, 3–10, 12, and 16–20 of its U.S. Patent 5,499,017 (the "'017 patent") as anticipated and obvious over three references. *See Ex Parte Avid Identification Sys., Inc.*, No. 2011-000474 (B.P.A.I. Mar. 23, 2011) ("*Board Opinion*"), *reh'g denied*, No. 2011-000474 (B.P.A.I. June 14, 2011) ("*Rehearing Opinion*"). Because the Board did not err in rejecting the claims as anticipated and obvious, we *affirm*.

## BACKGROUND

Avid owns the '017 patent relating "to systems consisting generically of an interrogator-responsor (or 'reader') inductively coupled to a transponder (or 'tag') where the reader is associated with the identifying agency and the tag is associated with the object to be identified." '017 patent col. 1 ll. 10–14. Such tags are commonly known as radio-frequency identification ("RFID") tags. The claims of the '017 patent recite RFID tags that contain both memory that cannot be reprogrammed and memory that can be reprogrammed. *Id.* col. 1 ll. 49–68. They designate some portion of memory as "unalterable," as represented in claim 1:

1. An electronic identification tag comprising:

---

\* Judge Bryson assumed senior status on January 7, 2013.

> a means for permanently storing data in an unalterable fashion, said data being known as unalterable data;
>
> a means for permanently storing data in an alterable fashion, said data being known as alterable data;
>
> means for detecting an interrogation signal;
>
> means for discriminating between a non-modulated signal and a modulated interrogation signal; and
>
> a means for communicating said unalterable data and said alterable data to an electronic identification reader upon detection of a non-modulated signal.

*Id.* col. 11 ll. 20–31. Each claim in this appeal requires a means for permanently storing data in an unalterable fashion. Independent claims 1 and 20 and dependent claim 3 also include a limitation for "discriminating between a non-modulated signal and a modulated interrogation signal," *e.g.*, *id.* col. 11 ll. 27–28, while dependent claims 4, 8, and 12 include a limitation for delaying enablement of the tag functions for a predetermined amount of time. *E.g.*, *id.* col. 11 ll. 46–48. Independent claim 17 further provides for a "clock timer and delay circuitry" to prevent the tag from being read twice if the tag is held in the vicinity of the reader. *Id.* col. 10 ll. 27–42.

Three prior art references are relevant to this appeal: U.S. Patent 4,937,581 of Baldwin ("Baldwin '581"), U.S. Patent 4,075,632 of Baldwin ("Baldwin '632"), and U.S. Patent 4,303,904 of Chasek ("Chasek"). Baldwin '581 discloses an identification system that includes an information and identity storage device (an RFID tag) in-

stalled on a moving object and at least one interrogation station (an RFID reader). The RFID tag contains a memory bank that stores both "fixed" and "changing" data in different portions of the memory. '581 patent col. 1 ll. 61–68. The "fixed" information can be safeguarded by a "protect means" to prevent the erasure or reprogramming of the write-protected "fixed information" stored on the RFID tag. *Id.* col. 3 ll. 32–33. The '581 patent also contains an example in which the "protect means" is integrated with a light activated switch that, only when illuminated, permits the "fixed" information to be erased and reprogrammed. *Id.* col. 4 ll. 4–8, col. 3, ll. 7–10. The example also states that the RFID tag can only be reprogrammed after physically removing it from the moving object. *Id.* col. 3 ll. 3–7.

Baldwin '632 discloses an RFID system that can discriminate between modulated and non-modulated signals. Modulation is the process whereby a high frequency periodic waveform (or signal) is varied with information desired to be transmitted. By modulating the signal and transmitting the modulated signal, the information can be retrieved after transmission by the receiving device. Baldwin '632 col. 1 l. 64–col. 2 l. 11. Baldwin '632 also discloses a tag and reader combination where the tag receives a non-modulated signal and transmits back a modulated signal. *Id.* col. 3 ll. 25–31. Alternatively, the patent discloses that the reader can send a modulated signal to provide the tag with command signals and other information. *Id.* col. 3 l. 54–col. 4 l. 5.

Chasek teaches an electronic toll-paying system wherein the RFID tag includes a mechanism that delays the tag from transmitting its data to an RFID reader for a set period of time. The tags taught by Chasek include a latch switch that disables all but a few non-transmission circuits. Chasek col. 4 ll. 64–68. After the tag has paid

the toll, the switch disables the tag's transmission capabilities for a predetermined period of time to prevent the tag from retransmitting information and thus preventing double billing at a toll booth when a vehicle is in slow traffic. *Id.* col. 5 ll. 59–64.

The PTO granted a third party request for *ex parte* reexamination of the '017 patent on August 8, 2007. The examiner then rejected claims 1, 3–10, 12–13, and 15–20 as anticipated and obvious in light of the above references and their various combinations. Specifically, the examiner rejected claims 7, 10, and 19 as anticipated by Baldwin '581; claims 1, 3, and 20 as obvious over Baldwin '581 in view of Baldwin '632; claim 4 as obvious over Baldwin '581 in view of Baldwin '632, further in view of Chasek; claims 5, 6, 9, 16, and 18 as obvious over Baldwin '581; and claims 8, 12, 15, and 17 as obvious over Baldwin '581 in view of Chasek. Independent claim 13 and dependent claim 15 were confirmed as patentable after an initial rejection. Avid appealed the various rejections to the Board.

The Board agreed with the examiner, in particular, rejecting Avid's argument that Baldwin '581 does not disclose "unalterable data," which, as indicated, is a limitation of all the claims. *Board Opinion*, at *7. Because the '017 patent specification lacked an explicit definition for "unalterable data," the Board construed the term as "data that is not readily changeable" and as such found that Baldwin '581 disclosed that limitation. *Id.* The Board rejected Avid's other arguments, finding no error in the examiner's rejection of claims 1, 3–10, 12, and 16–20, *Id.* at *7–18, and denied Avid's petition for rehearing, *Rehearing Opinion*, at *10. Avid timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

We review the Board's legal conclusions *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings underlying those determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). We review claim construction *de novo*. *In re Baker Hughes Inc.,* 215 F.3d 1297, 1301 (Fed. Cir. 2000). During reexamination, "the PTO must give claims their broadest reasonable construction consistent with the specification." *In re Suitco Surface, Inc.,* 603 F.3d 1255, 1259 (Fed. Cir. 2010). Anticipation is a question of fact reviewed for substantial evidence in an appeal from the Board. *In re Gleave*, 560 F.3d 1331, 1334–35 (Fed. Cir. 2009). Obviousness, on the other hand, is a question of law, based on underlying factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966); *Elsner*, 381 F.3d at 1127.

I.

We first address Avid's argument that Baldwin '581 does not anticipate claims 7, 10, and 19 under 35 U.S.C. § 102, that it does not render obvious claims 5, 6, 9, 16, and 18 under 35 U.S.C. § 103(a), and that it was not a proper reference for obviousness rejections for claims 1, 3, 4, 8, 12, 17, and 20 on the ground that the Board's construction of "unalterable data" was unreasonable and inaccurate. Avid argues that the Board erred by construing "a means for permanently storing data in an unalterable fashion, said data being known as unalterable data" as "data that is not readily changeable." Specifically, Avid argues that the function of the limitation "means for permanently storing data in an unalterable fashion" is

simply "permanently storing data in an unalterable fashion." Avid Br. 19.

The Director responds that the Board simply gave the claims their broadest reasonable interpretation consistent with the specification. He argues that the '017 patent provides no explicit definition of "unalterable data," but that the Board correctly looked to the specification to construe that limitation. The Director points out that the specification describes unalterable data as "permanent" but also as "data that never needs to be changed," '017 patent, at [57], and data that "usually cannot be reprogrammed," *Id.* col. 1 ll. 49–57. The Director asserts that the Board was correct in construing "unalterable data" as "data that is not readily changeable."

We agree with the Director that, as the Board properly gave the limitation "unalterable data" its broadest reasonable interpretation consistent with the specification, it did not err in its construction. The specification itself employs varying terminology in defining unalterable data. Although the patent describes unalterable data as "permanent," it also describes it as "data that never needs to be changed" and data that "usually cannot be reprogrammed." Thus, because there was no consistent, explicit definition in the specification, and there were varied uses of the phrase in the patent, the Board under its broadest reasonable construction practice did not err in construing "unalterable data" in the '017 patent claims as "data that is not readily changeable."

## II.

Avid argues that claims 7, 10, and 19 are not anticipated by Baldwin '581 because it does not disclose a "means for permanently storing data in an unalterable fashion." Aside from Avid's contention that the Board erred in construing "unalterable data," Avid argues that

Baldwin '581 only discloses "protected" memory that is not permanent and unalterable. It argues that because of this shortcoming, the Board's determination is not supported by substantial evidence because all data in the Baldwin '581 RFID tag are alterable. Avid points to examples within the '017 patent's specification that disclose non-reprogrammable memory types, which indicate the range of memory types that it discloses as a means for storing unalterable data, and argues that Baldwin's memory is none of those.

The Director contends that Baldwin '581 teaches an RFID tag with a memory that stores both "fixed" data, *i.e.*, data that cannot be altered, and alterable data. He argues that the ordinary meaning of the term "fixed" is "determined, established, set" and "not subject to change or variation." *The American Heritage College Dictionary* 515 (3d. ed. 1997). The Director states that the Board properly found "no difference between [Baldwin '581's] 'fixed' data or data protected from erasure and the claimed 'unalterable' data or data that are not readily changeable since both forms of data are 'fixed' and are therefore not readily changeable." *Board Opinion*, at *7.

We have already determined that the Board properly construed the claim term "unalterable data." Avid concedes in its brief that Baldwin '581 discloses an RFID tag including logic circuit and memory, trigger circuit and a transmitter. Its only contention that claims 7, 10, and 19 are not anticipated by the reference is that the Board's determination that Baldwin '581 taught unalterable data was not supported by substantial evidence. When determining whether Baldwin '581 taught "unalterable data," the Board found that the patent discloses a system "that can store both fixed and changing information," Baldwin '581 col. 1 ll. 62–63, data that "can be protected from accidental erasure *so that portion cannot be changed*," *id.*

col. 1 ll. 65–67 (emphasis added), "information [that] is protected from erasure," *id.* col. 2 ll. 3–4, and data that "may be protected from erasure as they contain fixed information," *id.* col. 2 ll. 14–16. It was after pointing to those statements that the Board found no difference between Baldwin's "fixed" data and the '017 patent's "unalterable data." The Board considered Avid's argument that even the "protected" data of Baldwin '581 is alterable but determined that the protected data may only be reprogrammed when the RFID tag is physically removed from the moving object it is installed on. Baldwin '581 col. 3 ll. 6–7. While the tag is installed, the data are permanent and unalterable. *Board Opinion*, at *8. We thus conclude that the Board's determination that Baldwin '581 anticipates claims 7, 10, and 19 was supported by substantial evidence.

Because the Board did not err in giving "unalterable data" its broadest reasonable interpretation and in finding Baldwin '581's disclosure to be of a means for permanently storing data in an unalterable fashion, we affirm the findings of the Board. We thus affirm the Board's conclusion that claims 7, 10, and 19 are invalid as anticipated by the Baldwin '581 reference.

The dissent argues that the PTO failed to properly examine the "means for storing" clause under § 112, ¶ 6 and hence that we should vacate the Board's decision and remand for further consideration. We disagree.

As the Director argues, Avid waived that point by failing to specifically argue that alleged procedural fault. Avid failed to point out to the Board on appeal or on rehearing its contention that the procedure for interpreting the "means for storing" clause was not followed. Avid and the dissent point to the fact that the Board has previously evaluated § 112, ¶ 6 cases without invoking waiver,

but the fact that the Board has on occasion overlooked particular procedural defaults does not mean that it is compelled to waive those procedural requirements for all subsequent cases. Any technical shortcomings in the procedure for evaluating the clause at issue were not raised and were thus waived. *See, e.g.*, *Ex Parte* Puneet Sharma, No. 2009-015156, 2012 WL 2486755, at *6 n.2 (B.P.A.I. June 27, 2012) (noting that "Appellant's arguments do not rely on the structure disclosed in Appellants' Specification . . . and equivalents thereof, and such arguments are, therefore, waived").

Use of the word "means" customarily raises a presumption that a clause containing that word followed by the function carried out by that means is subject to the limitation that the means covered by the claim are limited to structure recited in the specification for carrying out that function, plus equivalents. The dissent, and Avid, argue that without going through the formalities of finding the corresponding structure in the specification, a proper anticipation and obviousness analysis cannot be carried out. But Avid did not fully raise this point with the Board. And, while the presumption that the use of the word "means" requires a search for structure in the application at issue, an applicant needs to specifically raise the point if it is challenging the application of § 112, ¶ 6 by the PTO. *See* 37 C.F.R. § 41.37(c)(1)(v) (requiring identification of support in specification and, for means-plus-function limitations, corresponding structure as well). An appellant cannot prevail by arguing alleged technical flaws in the PTO's procedure when it has itself failed to comply with its own procedural obligations.

Here, the Board's rejection of the claims under the PTO's "broadest reasonable interpretation" guideline was sufficient to sustain the Board's rejection. If Avid wished to challenge the examiner's decision, it needed to explic-

itly articulate its grounds for doing so. Having failed to do that, it waived such an argument.

Avid advances the same arguments and reasoning to attack the Board's determination that claims 5, 6, 9, 16, and 18 were correctly rejected as obvious over Baldwin '581. Because Avid's arguments for anticipation and obviousness are the same, that the "unalterable data" term was incorrectly construed and not disclosed in Baldwin '581, for the reasons previously set forth we further conclude that the Board did not err in finding claims 5, 6, 9, 16, and 18 obvious over Baldwin '581. We also conclude that the Board did not err in utilizing Baldwin '581 as a reference, in combination with other references in rejecting claims 1, 3, 4, 8, 12, 17, and 20 as obvious under 35 U.S.C. § 103.

## III.

Avid next argues that the Board erred in rejecting claims 1, 3, and 20 as obvious over Baldwin '581 in view of Baldwin '632. Avid contends that the Board incorrectly concluded that Baldwin '632 disclosed a "means for discriminating between a non-modulated signal and a modulated interrogation signal; and a means for communicating said unalterable data and said alterable data to an electronic identification reader upon detection of a non-modulated signal." *E.g.*, '017 patent col. 11 ll. 27–31. Avid also argues that Baldwin '632 does not disclose a reflexivity modulator that receives a modulated interrogation signal as required by the claims.

The Director responds that Baldwin '632 was cited by the examiner only to show that use of modulated and non-modulated interrogation pulses was well-known in the art. The Director argues that Avid's arguments mischaracterize the examiner's rejection. J.A. 450. Instead, he

contends that the examiner utilized Baldwin '581, not Baldwin '632, for the limitations Avid contests.

We agree with the Director that Baldwin '632 was only cited to show that modulated and non-modulated signals were well-known in the art. J.A. 183. Avid makes arguments concerning the Baldwin '632 patent's failure to disclose specific limitations of the '017 patent claims, but the Board clearly stated in its opinion that those elements were disclosed in Baldwin '581. *Board Opinion*, at *12. The examiner cited Baldwin '632 only to show that the use of modulated and non-modulated signals was well-known in the art. Avid cites nothing to the contrary. We thus conclude that the Board did not err in finding claims 1, 3, and 20 obvious over Baldwin '581 in view of Baldwin '632.

## IV.

Avid argues that the Board erred in rejecting claims 4, 8, 12, and 17 as obvious over Baldwin '581 in view of Chasek. Avid contends that the Board erred in concluding that Chasek disclosed the limitations in claims 4, 8, and 12 of "controller means for delaying enablement of the tag functions for a predetermined amount of time following receipt of an interrogation signal . . . ." *E.g.*, '017 patent col. 11 ll. 46–48. Avid further contends that the Board erred with respect to the limitation in claim 17 of "a clock timer and delay circuitry for counting a predeterminable number of clock cycles after initial receipt of [the interrogation signal]." *Id.* col. 13 ll. 34–42. Avid argues that its claims call for the delay to occur after initial receipt of the signal from the RFID reader, but Chasek only discloses a latching switch whose delay starts after receipt of the entire transmission.

The Director responds that this new argument was not raised before the Board and is thus waived. He

contends that in the initial Board proceedings Avid only argued that the delay circuitry disclosed in Chasek was not located in the vehicle transponder/tag as required by the claims, not that the '017 patent requires a delay to occur on initial receipt of the signal. The Director argues that the Board on rehearing rejected the initial receipt delay argument as waived and that Avid cannot raise the waived argument on appeal. Avid does not respond to this point in its reply brief.

We agree with the Director that Avid first raised this argument in its petition for rehearing and that the Board properly refused to consider it in the first instance under 37 C.F.R. 41.52(a)(1). Similarly, "our review of the Board's decision is confined to the 'four corners' of that record" because for anything outside that record, "we do not have the benefit of the Board's informed judgment on [that] issue for our review." *In re Watts*, 354 F.3d 1362, 1367–68 (Fed. Cir. 2004). Because Avid failed to raise the timing of the delay argument before the Board, that argument is waived. Thus, the Board did not err in refusing to consider the argument based on the timing of the delay with respect to the obviousness of claims 4, 8, 12, and 17.

IV.

We have considered Avid's remaining arguments and conclude that they are without merit. Accordingly, the Board's decision is

**AFFIRMED**

NOTE: This disposition is nonprecedential

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE AVID IDENTIFICATION SYSTEMS, INC.**

---

2012-1092

(Reexamination No. 90/008,702)

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

CLEVENGER, *Circuit Judge*, dissenting.

The majority opinion focuses on the claim limitation "unalterable data." While I agree with the majority that Baldwin '581 discloses the claimed "unalterable data", I do not agree that the Board correctly found that Baldwin '581 discloses "a means for permanently storing data in an unalterable fashion," as required by Claim 1. Because Baldwin '581 does not disclose every limitation of Claim 1, it cannot be an anticipating reference.

The term "a means for permanently storing data" is undeniably a means-plus-function limitation. The question in this case is whether the Patent Office ("PTO") may use an unaltered broadest reasonable interpretation standard in examining means-plus-function claims, or if these claims must always be interpreted in accordance with 35 U.S.C. § 112, ¶ 6. The answer is easy.

35 U.S.C. § 112, our en banc decision *In re Donaldson*, the Manual of Patent Examining Procedure ("MPEP"), and past PTO practice are all in agreement: under § 112, ¶ 6, "the broadest reasonable interpretation that an examiner may give means-plus-function language is that statutorily mandated in paragraph six." *In re Donaldson*, 16 F.3d 1189 (Fed. Cir. 1189) (*en banc)*. Here, the PTO did not analyze the claim under § 112, ¶ 6, and so the only appropriate action is to remand the case to the Examiner with instructions to apply a correct claim construction.

I

First, the statute, 35 U.S.C. § 112, ¶ 6 reads:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.[1]

Second, In *Donaldson*, our en banc court held that "the plain and unambiguous" meaning of § 112, ¶ 6 requires the PTO to look to the specification and determine the structures and equivalents disclosed therein. *Donaldson*, 16 F.3d at 1193. Accordingly, § 112, ¶ 6 "sets

---

[1] Under the America Invents Act, § 112, ¶ 6 has been converted via amendment to § 112(f), which reads: "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f) (effective September 16, 2012).

a limit on how broadly the PTO may construe means-plus-function language under the rubric of "reasonable interpretation." *Donaldson* at 1194.

Third, the MPEP confirms that Patent Examiners are instructed to analyze means-plus-function claims in accordance with *Donaldson*. Once the Examiner determines that the claim is indeed a means-plus-function claim—an issue not in dispute in this case—the MPEP instructs the Examiner to perform a two-step claim construction analysis, laid out in *Golight Inc. v. Wal-Mart Stores Inc.*, 355 F.3d 1327, 1333-34 (Fed. Cir. 2004). First, the Examiner must define the particular function of the claim limitation. Second, the Examiner must look to the specification and identify the corresponding structure for that function. MPEP § 2182, 8th Ed., Rev. 9 (August 2012). With the claim correctly construed, the Examiner searches the prior art for the disclosed structures and their equivalents. MPEP § 2183.

Finally, past PTO practice confirms that the PTO actually performs the correct means-plus-function analysis in many cases. In fact, the Board of Patent Appeals and Interferences ("Board"), applies § 112, ¶ 6 to means-plus-function claims, even if the applicant or examiner have not raised the issue below.[2] This is even the case if the

---

[2] *See, e.g.*, *Ex Parte Ben Gill-Ho Lee*, No. 2011-6067, 2012 WL 3105536 (B.P.A.I. July 26, 2012) (reversing obviousness rejection for failure to apply § 112, ¶ 6 and entering new § 112, ¶ 2 rejection); *Ex Parte Eyal Trachtman*, No. 2009-674, 2009 WL 1270359 (B.P.A.I. May 8, 2009) (reversing Examiner's prior art rejection for failing to construe claims in accordance with § 112, ¶ 6); *Ex Parte Hideo Yamanaka*, No. 2008-2006, 2008 WL 2233770 (B.P.A.I. May 30, 2008) (same); *Ex Parte Stefan Wickert*, No. 2010-8152, 2012 WL 3720920 (B.P.A.I. Aug. 26, 2012) (same); Ex *Parte Marcos Nogueira Novaes*, No. 2008-4794, 2010 WL 674292 (B.P.A.I. Feb. 23, 2010) (noting that

applicant does not comply with 37 C.F.R. § 41.37(c)(1)(v), cited by the Board in our case as a reason to abdicate its *Donaldson* duties. *Ex Parte Avid Identification Systems, Inc.*, No. 2011-474, 2011 WL 2441010 at 13 (B.P.A.I. June 13, 2011) (Torczon, APJ, dissenting from Decision on Request for Rehearing).[3] There is no reason why this case

neither applicant or Examiner applied § 112, ¶ 6 and adding a § 112, ¶ 2 rejection); *Ex Parte Mark Michaud*, No. 2009-14404, 2011 WL 5023925 (B.P.A.I. Oct. 19, 2011) (reversing Examiner's prior art rejection for failing to construe claims in accordance with § 112, ¶ 6 and adding a new prior art rejection); *Ex Parte Mark Thomas Johnson*, No. 2010-3268, 2012 WL 4460617 (B.P.A.I. Sept. 24, 2012) (noting that neither applicant or Examiner applied § 112, ¶ 6 and adding a § 112, ¶ 2 rejection); *Ex Parte Richard Ian Knox*, No. 2009-12769, 2011 WL 5288869 (B.P.A.I. Nov. 2, 2011) (same); *Ex Parte Yoshihiko Kuroki*, No. 2010-8896, 2012 WL 1375263 (B.P.A.I April 17, 2012) (noting that Examiner did not interpret claims under § 112, ¶ 6 and sustaining rejections under correct § 112, ¶ 6 treatment).

[3] *See, e.g.*, *Ex parte Ari. M. Koivisto*, No. 2010-5398, 2012 WL 2573012 (B.P.A.I. June 28, 2012) (directing Examiner to apply § 112, ¶ 6 to further prosecution of claims); *Ex Parke Geoff M. Lyon*, No. 2008-3388, 2008 WL 4371708 (B.P.A.I. Sept. 24, 2008) (remanding to Examiner to apply § 112, ¶ 6 and noting that the appeal brief failed to comply with Rule 41.37); *Ex Parte Walter H. Whitlock*, No. 2007-630, 2007 WL 2211319 (B.P.A.I. July 30, 2007) (same); *Ex Parte John W. Lee*, No. 2009-2134, 2009 WL 2563536 (B.P.A.I. Aug. 17, 2009) (reversing Examiner's prior art rejection for failure to construe the claims in accordance with § 112, ¶ 6, and noting that Appellant's failure to comply with Rule 41.37); *Ex Parte Siddhartha Chatterjee*, No. 2009-14001, 2011 WL 4872020 (B.P.A.I. Oct. 7, 2011) (reversing Examiner's prior art rejection for failure to construe the claims in accordance with § 112, ¶ 6, adding § 112, ¶ 2 rejection, and noting that Appellant's failure to comply with Rule 41.37); *Ex Parte Thierry Lamotte*, No. 2009-12591, 2012 WL 359598 (B.P.A.I. Jan.

should be treated differently from past instances where the PTO has correctly construed means-plus-function claims.

The PTO is required to act properly under the Administrative Procedure Act. It cannot behave arbitrarily. But it does so regularly, much to the detriment of the public, when confronting § 112, ¶ 6 claims. Sometimes it honors its *Donaldson* duties, and sometimes it shirks them, hiding behind 37 C.F.R. § 41.37(c)(1)(v). Random is the polite word for the Board's erratic behavior. This court should hold the PTO to its obligations, because doing so benefits the public.

II

Not only does the law require that the PTO apply § 112, ¶ 6 to means-plus-function claims, but proper § 112, ¶ 6 treatment also involves an indefiniteness analysis under § 112, ¶ 2. *Donaldson* at 1195 ("if one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112.").

In this case, the Examiner allowed claim 13 without explicitly interpreting the claim under § 112, ¶ 6. Meanwhile, a district court found that there was no support in the specification for the limitation "means for decoding a password..." in the same claim. *Allflex USA Inc., v. AVID Identification Systems, Inc.*, Case No. 5:06-cv-1109, ECF No. 469 at 15 (C.D.Ca. Feb. 17, 2010) (Claim Construction

31, 2012) (applying § 112, ¶ 6 to claims despite Appellant's failure to comply with Rule 41.37);

Order). Had the Examiner properly considered the requirement that the specification disclose structure corresponding to the "means" claimed, this inconsistent result could have been avoided.

In fact, the PTO recognizes that indefinite means-plus-function claims are a common problem. The PTO's Supplementary Examination Guidelines for Determining Compliance with 35 U.S.C. § 112, 76 Fed. Reg. 7162, 7167-8 (Feb. 9, 2011), requires that Examiners analyzing claims under § 112, ¶ 6 ensure that the claims satisfy § 112, ¶ 2. "The disclosure must be reviewed from the point of view of one skilled in the relevant art to determine whether that person would understand the written description to disclose the corresponding structure, material, or acts. To satisfy the definiteness requirement under § 112, ¶ 2, the written description must clearly link or associate the corresponding structure, material, or acts to the claimed function."

## III

Because the Examiner and the Board did not properly interpret the "means for permanently storing data in an unalterable fashion" limitation, we do not know the answer to several pertinent questions. We do not know the identity of the structure in the specification, if any, that mates with this means limitation. So we do not know if the patent fails as indefinite. Assuming the patent is not indefinite, we do not know the identity of the structural equivalents of the structure disclosed in the specification. For purposes of anticipation, we do not know if Baldwin discloses the structure supporting the means limitation, although we do know that Judge Torczon in dissent determined that Baldwin does not disclose a structural equivalent. And further we do not know whether the "means for permanently storing" limitation is

obvious. We would know the answer to these questions had the PTO not shirked its *Donaldson* duties. In my view, the anticipation and obviousness judgments by the Board are infected, and the infection can only be cured by proper application of § 112, ¶¶ 6 and 2.

The correct result in this appeal is a remand to the Board with directions to follow the lead of Judge Torczon and obey *Donaldson*. Because the majority does not agree with me, I respectfully dissent.